THOMAS J. ATKINS & HIS FIVE SONS, LTD., Plaintiff, *v.* MASSACHUSETTS BONDING AND INSURANCE COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Brooklyn, March 6, 1954.

*Ira M. Greene* for plaintiff.

*John J. Kirwan* and *Peter A. Verdirame* for defendant.

ALTER, J. This is an action upon a policy of, commonly called, robbery insurance issued by the defendant to the plaintiff for loss by " robbery " of money or property from plaintiff's premises.

The plaintiff's claim is based upon an alleged robbery on the night of December 13, 1952, in which the sum of $1,496.03 was feloniously abstracted from a filing cabinet in the plaintiff's place of business.

The pertinent provisions of the policy are as follows: " 11. Loss inside premises: To indemnify the Assured for all loss of or damage (hereinafter called loss) to such property while in the premises, and for damage to the Premises if the Assured is the owner thereof or is liable for such damage, provided such loss is occasioned by: Robbery: (a) Robbery or attempt thereat from a Custodian while within the Premises * * *.''

The policy further provided: '' This policy is subject to the following agreements, limitations and conditions: Definitions: A. The following terms, as used in this Policy, shall have the respective meanings stated in this paragraph: ' Robbery ' means a felonious and forcible taking of insured property: (1) by violence inflicted upon a Messenger or a Custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by an officer or employee of the Assured * * *.''

The facts fully warrant the conclusion that there was a breaking into the plaintiff's place of business, but the question is whether this breaking in and the extraction of the certain sum of money from the filing cabinet in the plaintiff's store, if we believe the plaintiff's claim, was a burglary or a robbery within the terms of the policy.

The plaintiff in this connection calls attention to the well-known rule of liberal construction of policy terms as regards the assured; with such contention there can be no disagreement. Especially so where a question of ambiguous wording of a policy term be concerned.

In construing policy language it is to be such as common thought and common speech would imagine and describe it. (*Abrams* v. *Great Amer. Ins. Co.,* 269 N. Y. 90.)

Upon a plaintiff is the burden of establishing affirmatively and by competent evidence a loss which falls within the terms and conditions of the policy (*Gallin* v. *Allemannia Fire Ins. Co.,* 184 App. Div. 876, affd. 230 N. Y. 547).

The judicial function of the court is to enforce the contract as it is written. Such rules are applicable to policies of burglary or robbery insurance (*Smith* v. *Fidelity & Deposit Co.,* 98 N. J. L. 534).

A reading of the policy hardly discloses any ambiguity in the wording of the policy clauses herein referred to.

Such of the circumstances attending the loss by the plaintiff, as produced by the evidence at the trial, as are material to the present inquiry, may be briefly stated as follows: The plaintiff is engaged in business as a florist having its place of business in the borough of Brooklyn. Shortly before 3:00 P.M. on Friday, December 12, 1952, plaintiff's president withdrew from its bank the sum of $1,496.03 for the purpose of meeting its payroll. That money was put into a metal filing cabinet situated in the balcony office of the plaintiff and was locked; at nine o'clock in the evening of that day this place of business was closed under lock and key by this president.

The witness, Harry Atkins, testified that at about 4:45 A.M. on Saturday, December 13, 1952, he went to the plaintiff's store and opened it; he was alone; he came there at that early hour "to finish up and prepare a big job for delivery" at a certain place. While under the office balcony, he went to place his overcoat there, he heard a crashing noise, like broken glass; he grabbed his coat and listened again, and looking to the rear of the store about thirty feet away where a night light was burning, he saw two young men there, already inside the store. They had some metal objects in their hands, one carried what to him looked like a long shiny knife and the other one had a long piece of lead pipe in his hand, as they (robbers) were coming towards him from the back of the store he momentarily froze and yelled "I am a married man" and ran out of the store through the

front door, in fear of his life. Once outside, he ran to the corner of Sutter and Snediker Avenues looking for help; saw no one at that hour of the morning but his assistant, another employee, who was assigned to help him load up for the delivery at the certain place; both of them looked through the glass window in the front of the store. They heard a noise which sounded like a dropped vase or pot, and saw the two young men running from the foot of the mezzanine or balcony stairs towards the open back door leading to the yard in the rear at the left of the premises. They entered the store after the two robbers left the store.

The recital of the foregoing facts is substantially all of the evidence concerning the alleged robbery. I have given the plaintiff the benefit of all favorable inferences, although at the trial there were some discrepancies in the story as told by the witness, Harry Atkins. I might add at this point that the witness, Harry Atkins, did not notify the police and it was not until after 10:00 A.M. that the police were notified, more than five hours after the occurrence.

The ultimate and decisive question presented here is whether the policy covers the loss sustained by the plaintiff, under the circumstances above stated.

The policy is, obviously, not intended to provide indemnity against any and all loss by theft or burglary from the plaintiff's premises, but only such loss as results from the employment of means specified therein. A more complete or general indemnity could have been obtained through a different policy carrying more comprehensive provisions as to the manner of loss.

The plaintiff claims, however, that the circumstances of this case constitute " robbery " as defined by the policy.

The risk assumed was not against burglary or robbery in whatever manner accomplished, but limited by the express terms of the policy.

The language of the policy carefully limits the liability of the insurer to losses sustained through " robbery ". It defines " robbery " as a " felonious and forcible taking of insured property: (1) by violence inflicted upon a Messenger or a Custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant ".

In the case at bar there is no claim that " violence was inflicted upon a * * * Custodian ". We may call Harry Atkins the " Custodian ".

The only clause in this definition of " Robbery " as defined in the policy upon which the plaintiff may base its claim is subdivision " 2 ". It says " by putting him (the Custodian) in fear of violence ". Let us now determine whether the circumstances here would warrant the court to make a finding that in this case there was a felonious and forcible taking of the sum of $1,496.03 from the possession of the plaintiff by " putting him (the Custodian) in fear of violence ".

Referring to section 2120 of our Penal Law : " Robbery defined Robbery is the unlawful taking of personal property, from the person or in the presence of another, against his will, by means of force, or violence, or fear of injury, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery."

Section 2121 of the Penal Law, provides : " Force or fear must be employed. To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking. If employed merely as a means of escape it does not constitute robbery."

And then we have section 2122 which says : " Degree of force immaterial. When force is employed in either of the ways specified in the last section, the degree of force employed is immaterial."

As we have seen, the policy provision recites " by putting him in fear of force ". It has been held that force, by which robbery is committed, may be divided into two classes, actual and constructive ; under the former is included all violence inflicted directly on the person robbed ; under the latter, all demonstrations of force, menaces and means by which the person robbed is put in fear sufficient to suspend the free exercise of the will, or prevent resistance to the taking.

In the case at bar we have no proof to show that the two thieves stole the money from the filing cabinet before they were observed by the witness, Harry Atkins, or thereafter. From the testimony adduced at the trial, I can hardly make a finding that the force or fear employed upon the witness, Harry Atkins, was to obtain or retain the property stolen. I am more inclined to believe that it was employed as " a means of escape ". (Penal Law, § 2121.)

It has been held that if the force or fear is employed merely as a means of escape, it does not constitute robbery. (*State* v. *Clark*, 12 Mo. App. 593. See, also, *Jackson* v. *State*, 114 Ga. 826.)

The distinction between larceny and robbery is a nice one. The criterion which distinguishes these offenses is the violence

which precedes the taking. There can be no robbery without violence, and there can be no larceny with it. It is violence that makes robbery an offense of greater atrocity than larceny. Robbery may thus be said to be a compound larceny composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking.

An intent to steal is essential, so is violence or putting in fear. The violence or intimidation must precede or be contemporaneous with the taking of the property.

In *Monaghan* v. *State* (10 Okla. Crim. 89), it was held to constitute " robbery " as distinguished from larceny from the person there must be force, violence or intimidation in the taking. Therefore, where there is no evidence tending to show that the defendant obtained or retained the personal property alleged to have been taken by force and violence or by putting in fear, the crime is grand larceny and not robbery. (See, also, to the same effect *Commonwealth* v. *Titsworth,* 30 Ky. L. Rep. 402; 23 R. C. L., Robbery, § 10, p. 1144, and *Colbey* v. *State,* 46 Fla. 112.)

I therefore find that there is no evidence to show that the two robbers took the plaintiff's personal property, viz.: money, from the person in charge of its store through fear by him of injury.

There can be no recovery where the loss is not within the policy terms, or within any of the exceptions thereof (*Wormser* v. *General Accident Assur. Corp.,* 94 App. Div. 213).

The court finds that the risk assumed was not against burglary or robbery in whatever manner accomplished and it holds (1) that ambiguities in the policy, if any, should be construed against the defendant and in favor of the plaintiff, (2) the abstraction from the plaintiff's cabinet of the sum of $1,496.03 was felonious, (3) the taking of the money from the filing cabinet was not by means of " robbery " within the meaning of the provisions of the policy, and (4) the defendant is not liable to the plaintiff for the loss sustained upon the policy and the certificate of renewal annexed.

In concluding, let me point out that I have not passed upon the objection by the defendant that the " Company shall not be liable for loss: (1) unless records are kept by the Assured in such manner that the Company can accurately determine therefrom the amount of loss " as provided by the clause of the policy designated " Exclusions. C. ", as I need not pass upon such objection because I have already decided that the plaintiff's loss is not covered by the policy issued by the defendant.

Judgment for the defendant.